# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) Case No. 1:06CR00016 |
| | ) |
| v. | ) **OPINION** |
| | ) |
| **CARROLL EDGAR BLEVINS**, | ) By: James P. Jones |
| | ) Chief United States District Judge |
| Defendant. | ) |

*Jennifer R. Bockhorst, Assistant United States Attorney, Abingdon, Virginia, for United States; Steven Jay Rozan, Steven Jay Rozan & Associates, Houston, Texas, and Jimmie L. Hess, Jr., Conway Law Firm PLLC, Abingdon, Virginia, for Defendant.*

The defendant, a federal inmate, brings this Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C.A. § 2255 (West 2006), on the grounds that his previous attorney was constitutionally ineffective. The government has moved to dismiss the motion. Based on the record, I find that the government's motion must be granted.

I

Carroll Edgar Blevins was indicted in this court on March 7, 2006, with two counts of distribution of methamphetamine, in violation of 21 U.S.C.A. § 841(a)(1)

& § 841(b)(1)(C) (West 1999 & Supp. 2008). The government filed a sentence enhancement information, pursuant to 21 U.S.C.A. § 851 (West 1999), based on his prior drug convictions. In addition, at the time Blevins was serving two terms of supervised release, and the government sought to revoke that supervision.

Blevins was initially represented by attorney Robert Dickert, but at Blevins' request, the magistrate judge relieved Dickert and appointed attorney David L. Harmon to represent Blevins. A jury trial was originally scheduled for May 12, 2006, but was continued on the government's motion and then on the defendant's motion, until August 14, 2006.

In the weeks before trial, Harmon filed a Motion to Subpoena Witnesses and a Motion for Discovery of Brady Material. Both motions were granted, although the discovery motion was denied in part, with the magistrate judge noting that the United States Attorney's Office "generally affords defense counsel the opportunity, upon request, at a reasonable time prior to trial to inspect and copy relevant information, including but not limited to the materials described in Fed. R. Crim. P. 16(a)(1)." (Order 1, Aug. 1, 2006.) The magistrate judge also noted the government's ongoing obligation to disclose materials described in *Brady v. Maryland*, 373 U.S. 83 (1963), and related cases "regardless of any specific direction from the court." (*Id.* at 2.)

Harmon moved again on August 10, 2006 to continue the trial on grounds that a number of necessary witnesses were either unavailable or had not yet been located. On August 11, 2006, before the court had ruled on the Motion to Continue, Harmon notified the court that Blevins intended to plead guilty without the benefit of a plea agreement. After conducting a hearing on August 14, 2006, I accepted Blevins' guilty plea and ordered a Presentence Investigation Report ("PSR"). At the sentencing hearing on November 3, 2006, Harmon objected to the PSR, arguing that a prior conviction was too old to count under the career offender guideline and that the court should depart downward from the guideline sentencing range because it was ten times higher than the guideline range based on drug amount alone. I overruled the objections and denied the Motion for a Downward Departure. I sentenced Blevins to 188 months as to each of the two counts, with the terms to be served concurrently.[1] I also found that Blevins had violated the terms of his supervised release as to the two previous convictions, revoked his supervised release, and imposed an aggregate, consecutive sentence of 51 months.

---

[1] Based on a 1991 conviction for distribution of cocaine and a 1996 conviction for conspiracy to distribute methamphetamine, the probation officer classified Blevins as a career offender under U. S. Sentencing Guidelines Manual ("USSG") § 4B1.1 (2005). With this status, his base offense level was 34, adjusted by three levels for acceptance of responsibility, giving him a total offense level of 31. With his criminal history category of VI, his advisory sentencing range was 188 to 235 months.

Blevins appealed, arguing that he was not properly classified as a career offender and that the court should have departed downward. The United States Court of Appeals for the Fourth Circuit affirmed the convictions and sentence. *United States v. Blevins*, 242 F. App'x 62, 64 (4th Cir. 2007) (unpublished).

In 2008, Blevins filed the present § 2255 motion, alleging that attorney Harmon rendered ineffective assistance of counsel, as follows:

1. by failing to file any pretrial motions on the defendant's behalf;

2. by failing to call Brenda Miller as a witness at sentencing;

3. by failing to obtain in advance a written statement from Miller about what actually happened during the alleged drug transactions between the defendant and the confidential informant;

4. by failing to challenge the credibility of the Probation Officer who testified that he had visited the defendant's "apartment," when in fact, the defendant lived in a house;

5. by failing to file a Motion for Continuance of Sentencing after his office computer malfunctioned and prevented him from retrieving information vital to the defendant's sentencing; and

      6.     by falsely informing the defendant that he had hand-delivered a Motion for Continuance of Sentencing, when in fact, no such motion had been filed.

In support of the § 2255 motion, Blevins submitted an affidavit from Brenda Miller, who was present during the two drug transactions for which he stands convicted. She states that she would have testified about the incidents to demonstrate that Blevins is innocent.

The government has filed its response to the motion, supported by attorney Harmon's affidavit and attachments. Blevins has filed no reply to the government's response, and it is ripe for decision.[2]

II

To state a claim for relief under § 2255, a defendant must show that one of the following occurred: (1) his sentence was "imposed in violation of the Constitution or laws of the United States"; (2) that "the court was without jurisdiction to impose a such a sentence"; (3) that "the sentence was in excess of the maximum authorized by law," or (4) "is otherwise subject to collateral attack." 28 U.S.C.A. § 2255(a). In

---

[2] By order, the defendant was granted leave to file a response or additional pleadings within twenty days following the government's answer. The order provided that thereafter the case would be considered ripe for disposition. (Order 1, Aug. 11, 2008.)

a § 2255 motion, the defendant bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir.1958) (per curiam).

To prove that counsel's representation was so defective as to require reversal of the conviction or sentence, a defendant must meet a two-prong standard, showing that counsel's defective performance resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, the defendant must show that "counsel's representation fell below an objective standard of reasonableness," considering circumstances as they existed at the time of the representation. *Id.* at 687-88. The defendant must overcome a strong presumption that counsel's conduct represented sound trial strategy under the circumstances and so fell within the range of competence demanded from attorneys defending criminal cases. *Id.* at 689.

Second, to show prejudice, the defendant must demonstrate a "reasonable probability" that but for counsel's errors, the outcome would have been different. *Id.* at 694-95. When the defendant alleges that counsel's error led him to enter an invalid guilty plea, he can show prejudice only by demonstrating "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). If it is clear that the defendant has not satisfied one prong of the *Strickland/Hill* test,

the court need not inquire whether he has satisfied the other prong. *Strickland*, 466 U.S. at 697.

Blevins first asserts that counsel should have done more investigation before advising him to plead guilty. He asserts that counsel should have filed certain pretrial motions, including motions seeking the following discovery: material discoverable under Rule 404(b) of the Federal Rules of Evidence; *Brady/Giglio* materials; to compel agents to preserve rough notes; the identity of confidential informants; and equal access (Claim 1). Blevins argues that by filing such motions, counsel would have learned that none of the drug baggies recovered in the case bore fingerprints from Blevins and that the tapes of the controlled buys included "extremely favorable information" as "there was nothing on the tape to indicate that a drug buy took place."[3] (§ 2255 Motion 4.) He also asserts that counsel should have obtained a written statement from Miller regarding the drug sales (Claim 3).

Trial counsel Harmon's undisputed affidavit indicates that these pretrial preparation claims have no merit under *Strickland/Hill*. The attorney who had represented Blevins initially provided Harmon with extensive materials from the government's file, pursuant to the government's "open file" policy. This material

---

[3] According to Blevins, Miller's testimony could have clarified for a jury that the taped transactions concerned payment of a debt and not exchange of money for drugs.

- 7 -

included copies of the tapes of the controlled buys, along with transcripts of those tapes, a copy of the *Miranda* warning given to Blevins, and a synopsis of statements attributed to Blevins and his fiancee, Brenda Miller. Contrary to the defendant's arguments, the tapes and the statements indicate that Blevins discussed prices and drug amounts with the confidential informant, "Larry," on October 25 and December 15, 2005.[4]

In addition to reviewing the discovery materials provided to him, counsel spoke to the investigating officers regarding Blevins's arrest and information concerning "Larry"; reviewed court records to compile a list of prior offenses for Blevins and "Larry";[5] researched issues surrounding Blevins's confession and Miller's statement; and interviewed each of the witnesses Blevins requested for his defense. On August 1, 2006, just before trial, counsel filed a Supplemental

---

[4] The government also could have presented testimony with the officers working with Larry in making the drug buys and could have proffered lab test results indicating that the substances Larry purchased from Blevins were methamphetamine. (Guilty Plea Tr. 10.) After his arrest, Blevins made a statement to investigators, admitting that he had sold methamphetamine to "Larry" on the two occasions charged in the indictment. (*Id.* at 11).

[5] Miller, in her affidavit, indicates that Blevins asked Harmon to get records from the Department of Motor Vehicles to show that "Larry" had a suspended driver's license. Although Blevins does not expressly raise this allegation in his § 2255 motion, Harmon responds in his affidavit that he retrieved the suspended license information from another, more accessible source, but found the information to be useless because the investigating officers said that "Larry" was not allowed to drive during the controlled buys.

Discovery Request for *Brady* material, specifically requesting additional information about "Larry" and his violations of probation.

Harmon avers that through this investigation and research, he "assured [himself] that there was no other information available that would impact favorably" for the defense and found no basis to move for suppression of the certification of the methamphetamine or of Blevins's prior statement. (Govt. Ex. 1, 2.) He further states that, in his experience, arguing the lack of fingerprints on drug baggies as a defense is ineffective, as the response from prosecution witnesses is that fingerprints generally cannot be lifted from that substance. Miller's statements to law enforcement and her statements in pretrial interviews with Harmon were, he felt, too contradictory and unconvincing to be beneficial to the defense. At times, Miller said that the meeting between "Larry" and Blevins involved payment of a debt, while at other times, she said that it was a drug transaction. For this reason, Harmon avers that taking a written statement from Miller might have created problems for the defense and offered no benefit.

Based on the record and Harmon's undisputed account of his representation, I cannot find that Blevins has alleged facts on which he could overcome the presumption that Harmon's decisions regarding pretrial investigation and motions were reasonable strategic choices under the circumstances. Moreover, Blevins fails

to show prejudice under *Hill*. As a result of pleading guilty in the face of overwhelming evidence of guilt, he received a three-level reduction to his offense level, which reduced his advisory guideline range from 262 to 327 months imprisonment to 188 to 235 months. He fails to demonstrate any reasonable probability that counsel's filing additional pretrial motions or taking Miller's statement would have changed the legal and factual landscape of the case such that a reasonable defendant would have rejected the benefits of a guilty plea and instead would have insisted on a jury trial and the likelihood of the higher sentencing range. Thus, Claims 1 and 3 fail under *Strickland/Hill*, and I will deny relief accordingly.

In Claims 2 and 4, Blevins faults counsel for failing to investigate and present additional evidence with regard to sentencing. Counsel's affidavit, however, fully explains why each of the actions Blevins requests would not have been beneficial to the defense. As stated, Miller was not a credible witness and might have garnered perjury charges for herself if she had testified—in contradiction of prior statements she had made—that Blevins did not sell drugs to "Larry." Harmon did not challenge the probation officer's characterization of Blevins's residence for two reasons. First, Blevins's supervised release was revoked because he committed new criminal offenses, so casting doubt on the officer's supervision of him would have had no impact on the revocation of his release. Second, attacking the officer's credibility

would have damaged the defense effort to establish that Blevins had done well under that officer's monitoring, that Blevins was working hard and being cooperative while on supervision, and that the two small drug sales were isolated incidents.

I cannot find that these trial tactics were unreasonable. Nor does Blevins establish any reasonable probability that the outcome at sentencing would have been any different if Miller had testified or if counsel had informed the court that Blevins lived in a house, not in an apartment, as the probation officer stated. Both of these claims fail under *Strickland*, and I will deny relief accordingly.

Claims 5 and 6 assert that counsel should have moved for a continuance of sentencing based on computer problems and that he lied to Blevins about having filed a request for continuance. Blevins fails to present any specific piece of information not available to him at sentencing because of Harmon's computer problems. Indeed, counsel states that the information he lost as a result of the computer malfunction was either available to him from another source or could be recreated from memory. Harmon further states that

> [c]ontinuing the sentencing hearing would have accomplished nothing. All of the information that we needed for the arguments made at sentencing were available to us by the time of the sentencing hearing. . . . I never represented to [Mr. Blevins] or Ms. Miller that I had requested a continuance.

- 11 -

(Govt. Ex. 1, 4.) On these facts, I cannot find that counsel's failure to move for continuance of the sentencing hearing was either an unreasonable strategy or that absent this omission, the outcome at sentencing would have been different. Because Claim 5 fails under both prongs of *Strickland* and Claim 6 fails because Blevins has not shown prejudice, I will deny relief as to both claims.

III

A careful consideration of the record shows that Blevins fails to state any claim for relief under § 2255. Accordingly, I will grant the government's request to deny the motion.

A separate Final Order will be entered herewith.

ENTER: June 17, 2009

/s/ JAMES P. JONES
Chief United States District Judge

- 12 -

Case 1:06-cr-00016-JPJ   Document 93   Filed 06/17/09   Page 12 of 12   Pageid#: 274