# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

|                                          |     |                                        |
| ---------------------------------------- | --- | -------------------------------------- |
|                                          | )   |                                        |
| **UNITED STATES OF AMERICA**             | )   |                                        |
|                                          | )   | Case No. 1:06CR00016                   |
|                                          | )   |                                        |
| v.                                       | )   | **OPINION**                            |
|                                          | )   |                                        |
| **CARROLL EDGAR BLEVINS**,               | )   | By:  James P. Jones                    |
|                                          | )   | United States District Judge           |
| Defendant.                               | )   |                                        |

*Jennifer R. Bockhorst, Assistant United States Attorney, Abingdon, Virginia, for United States; Carroll Edgar Blevins, Pro Se Defendant.*

The defendant, a federal inmate, has moved for reconsideration of the Final Order entered June 16, 2009, denying his Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C.A. § 2255 (West Supp. 2010).  I construed this motion as seeking relief from judgment, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.  Upon consideration of the record, I find that the defendant's motion should be granted, but upon reconsideration of the issues, I conclude that he is not entitled to relief under § 2255.

# I

Carroll Edgar Blevins was indicted in this court on March 7, 2006, for two counts of distribution of methamphetamine, in violation of 21 U.S.C.A. §§ 841(a)(1) and 841(b)(1)(C) (West 1999 & Supp. 2010). These charges arose from an investigation in which law enforcement officers provided marked buy money to a confidential informant known as "Larry," who wore a recording device while purchasing methamphetamine from Blevins and his girlfriend, Brenda Miller, on two occasions, October 25, 2005, and December 15, 2005. The government filed a sentence enhancement information, pursuant to 21 U.S.C.A. § 851 (West 1999), based on his prior drug convictions. In addition, at the time of the drug offenses, Blevins was serving two terms of federal supervised release, and the government sought to revoke those terms.

Blevins was initially represented by appointed attorney Robert B. Dickert, but at Blevins' request, the magistrate judge relieved Dickert and appointed attorney David L. Harmon to represent Blevins. A jury trial was originally scheduled for May 12, 2006, but was continued first on the government's motion and then on the defendant's motion, until August 14, 2006.

In the weeks before trial, attorney Harmon filed a Motion to Subpoena Witnesses and a Motion for Discovery of Brady Material. Both motions were

granted, although the discovery motion was denied in part, with the magistrate judge noting that the United States Attorney's Office "generally affords defense counsel the opportunity, upon request, at a reasonable time prior to trial to inspect and copy relevant information, including but not limited to the materials described in Fed. R. Crim. P. 16(a)(1)." (Order 1, Aug. 1, 2006.)  The magistrate judge also noted the government's ongoing obligation to disclose materials described in *Brady v. Maryland*, 373 U.S. 83 (1963), and related cases, "regardless of any specific direction from the court." (*Id*. at 2.)

Harmon moved again on August 10, 2006, to continue the trial on the ground that a number of necessary witnesses were either unavailable or had not yet been located. On August 11, 2006, before the court had ruled on the Motion to Continue, Harmon notified the court that Blevins intended to plead guilty without the benefit of a plea agreement.  After conducting a hearing under Federal Rule of Criminal Procedure 11, I accepted Blevins' guilty plea and ordered the preparation of a Presentence Investigation Report ("PSR").

At the sentencing hearing on November 3, 2006, Harmon objected to the PSR, arguing that a prior conviction was too old to count under the career offender guideline and that the court should depart downward from the sentencing guideline range because it was ten times higher than the range based on drug amount alone.  I

overruled the objections and denied the Motion for a Downward Departure. I sentenced Blevins to 188 months imprisonment as to each of the two counts, with the terms to be served concurrently. I also found that Blevins had violated the terms of his supervised release as to the two previous convictions, revoked his supervised release, and imposed an aggregate, consecutive sentence of 51 months.[1]

Blevins appealed, arguing that his sentence had been wrongfully enhanced under the career offender guideline and that the court should have departed downward. The United States Court of Appeals for the Fourth Circuit affirmed the judgment. *United States v. Blevins*, 242 F. App'x 62, 64 (4th Cir. 2007) (unpublished).

Blevins then retained an attorney in Texas, Steven Jay Rosen, to file a § 2255 motion on his behalf. Rosen in turn associated a member of the bar of this court, Jimmie L. Hess, Jr., of the Conway Law Firm, in Abingdon, Virginia. On August 9, 2008, Rosen and Hess filed on Blevins' behalf the present § 2255 motion. Because

---

[1] Based on a 1991 conviction for distribution of cocaine and a 1996 conviction for conspiracy to distribute methamphetamine, the probation officer classified Blevins as a career offender under U. S. Sentencing Guidelines Manual ("USSG") § 4B1.1 (2005). With this status, his base offense level was 34, adjusted downward by three levels for acceptance of responsibility, giving him a total offense level of 31. With his criminal history category of VI, his advisory sentencing range was 188 to 235 months.

Rosen was not a member of the bar of this court, he was granted permission to practice before this court solely for the purposes of the § 2255 motion.

The § 2255 motion alleged that attorney Harmon had rendered ineffective assistance by failing (1) to file any pretrial motions on the defendant's behalf; (2) to call Brenda Miller as a witness at sentencing; (3) to obtain in advance a written statement from Miller concerning the alleged drug transactions; (4) to challenge the credibility of the probation officer who had testified that he had visited the defendant's "apartment," when in fact, the defendant lived in a house; and (5) to file a motion for continuance of sentencing after the attorney's office computer malfunctioned. In addition, it was alleged that the attorney falsely informed the defendant that counsel had hand-delivered a motion for continuance of sentencing, when in fact, no such motion was filed.

In response to these claims for relief, the government filed a Motion to Dismiss on October 10, 2008. No response to the government's motion was filed. On June 16, 2009, I granted the Motion to Dismiss. No appeal was noted.

Blevins filed the present Rule 60(b) motion pro se in February 2010. He asserted that the June 16, 2009 judgment denying his 2255 motion should be vacated, because the attorneys who filed the § 2255 motion had never informed him of the government's motion, thus depriving him of the opportunity to file any argument or

evidence in opposition to that motion. He also stated that these attorneys had failed to notify him of the Final Order, thus depriving him of the opportunity to appeal.

I requested responses to these allegations from attorneys Rosen and Hess. Rosen submitted a letter stating that, effective January 1, 2010, his law license had been suspended for two years by the State Bar of Texas. Rosen also stated that he "was not aware of and [did] not recall [his] office receiving a copy" of the Opinion and Final Order denying relief. (Rosen letter, Mar. 16, 2010.) Attorney Hess, the local attorney, wrote the court that he was told by Rosen's office on August 13, 2009, (two months after the 2255 motion was denied) to close his file and that his agreement with Rosen was only to file the 2255 motion and move for Rosen's admission pro hac vice.[2] The court's docket reflects that both Rosen and Hess were sent electronic notice of the government's Motion to Dismiss as well as the court's Opinion and Final Order denying relief.

Based on these responses, I found that the attorneys' failure to properly advise Blevins had resulted in the government's motion being decided without opposition. In the interest of justice, I allowed Blevins to file a supplement to the Rule 60(b)

---

[2] A pro hac vice admitted attorney appears only in association with the member of the bar of this court who moves his admission pro hac vice. W.D. Va. Gen. R. 6(d). Contrary to attorney Hess' apparent understanding, he was counsel in all respects in the case until granted leave to withdraw.

motion, setting forth any evidence or argument demonstrating why the judgment entered on June 16, 2009, should not stand.

Blevins submitted supplemental briefs and an affidavit. At the same time, he also notified the court that he had not received a copy of his trial attorney's affidavit submitted in support of the government's Motion to Dismiss, because this document had been filed under seal. After receiving a redacted copy of the affidavit, Blevins filed an additional supplement, which I have also considered.

## II

Rule 60(b) authorizes relief from a civil judgment based on, among other things, mistake, inadvertence, surprise, excusable neglect, or "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1), (6). Such relief is an extraordinary remedy and should be invoked only when "appropriate to accomplish justice" in "situations involving extraordinary circumstances." *Dowell v. State Farm Fire Cas. Auto Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993) (quotation marks and citation omitted). "Such circumstances will rarely occur in the habeas context." *Gonzales v. Crosby*, 545 U.S. 524, 535 (2005).

A Rule 60(b) motion that seeks to revisit a judgment dismissing a § 2255 action as without merit should be dismissed as a successive habeas petition to prevent

defendants from using such a motion to circumvent the rule against successive § 2255 actions in § 2255(h). *Id.* at 531-32. "[W]hen a Rule 60(b) motion attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings," the motion is not a successive habeas. *Id.* at 532. A habeas litigant may legitimately use Rule 60(b) to seek relief "from the effect of a default judgment mistakenly entered against them" or from judgment that is void for lack of subject matter jurisdiction. *Id.* at 534.

In his initial motion seeking vacatur of the June 16, 2009 judgment, Blevins attacked only the validity of the federal habeas proceedings, based on habeas counsel's failure to notify him of the government's motion or the final order. This initial motion did not seek to raise new evidence. Accordingly, under *Gonzales*, I find that it is appropriately considered as a Rule 60(b) motion, rather than as a successive § 2255 motion.

Generally, because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, the petitioner must bear the risk of attorney error. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 92 (1990) ("Under our system of representative litigation, each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.") (quoting *Link v. Wabash R.R.*, 370 U.S. 626, 634 (1962))

(internal quotation marks omitted). Courts must, on occasion, make exceptions to this rule. *See United States v. Moradi*, 673 F.2d 725, 728 (4th Cir. 1982) ("[J]ustice . . . demands that a blameless party not be disadvantaged by the errors or neglect of his attorney which cause a final, involuntary termination of proceedings."); *Coates v. Shalala*, 914 F. Supp. 110, 112 (D. Md. 1996) (finding that notice to attorney was not adequate notice to client when attorney/client relationship had ended, and client was not bound by attorney's failure to file timely pleading); *Kelly v. United States*, 805 F. Supp. 14, 15-16 (E.D. La. 1992) (granting relief from unopposed summary judgment under "catch all" provision of Rule 60(b), because justice required that plaintiff not be penalized for her attorney's carelessness in failing to note date of summary judgment hearing).

I find that the record reflects extraordinary circumstances in which granting the 60(b) motion, vacating the judgment, and reopening consideration of the § 2255 claims in light of the defendant's subsequent submissions, is "appropriate to accomplish justice." *See Dowell*, 993 F.2d at 48 (quotation marks and citation omitted). The judgment entered June 16, 2009, did not take into account pro se pleadings that the defendant would have filed, in view of the abandonment of his case by his attorneys. For this reason, I will order that the judgment be vacated.

The defendant bears the burden of proving by a preponderance of the evidence that he is entitled to collateral relief. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958). Upon consideration of the § 2255 motion, the government's motion, and the defendant's new argument and evidence, I conclude that Blevins has not met his burden and is not entitled to relief under § 2255.

III

A. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS.

To prove that counsel's representation was so defective as to require reversal of the conviction or sentence, a defendant must meet a two-prong standard, showing that counsel's defective performance resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, the defendant must show that "counsel's representation fell below an objective standard of reasonableness," considering circumstances as they existed at the time of the representation. *Id.* at 687-88. The defendant must overcome a strong presumption that counsel's conduct represented sound trial strategy under the circumstances and so fell within the range of competence demanded from attorneys defending criminal cases. *Id.* at 689.

Second, to show prejudice, the defendant must demonstrate a "reasonable probability" that but for counsel's errors, the outcome would have been different. *Id.*

at 694-95. When the defendant alleges that counsel's error led him to enter an invalid guilty plea, he can show prejudice only by demonstrating, objectively, that "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). If it is clear that the defendant has not satisfied one prong of the *Strickland/Hill* test, the court need not inquire whether he has satisfied the other prong. *Strickland*, 466 U.S. at 697.

A. Investigation Prior to Guilty Plea.

Blevins asserts that counsel should have done more investigation before advising him to plead guilty. He asserts that counsel should have filed additional pretrial motions to seek various discovery materials; to compel agents to preserve rough notes; and to seek disclosure of the identity and background of the confidential informants (Claim 1). Blevins asserts that counsel would thus have learned that none of the baggies of drugs recovered in the case bore fingerprints from Blevins and that the tapes of the controlled buys included "extremely favorable information" as "there was nothing on the tape to indicate that a drug buy took place." [3] (§ 2255 Motion 4.)

Blevins also asserts that counsel should have obtained a written statement from

---

[3] According to Blevins, Miller's testimony could have clarified for a jury that the taped transactions concerned payment of a debt and not exchange of money for drugs.

Brenda Miller regarding the drug sales, should have called Miller as a witness at sentencing, and should have informed Blevins before the guilty plea of Miller's willingness to testify that Blevins was innocent of drug distribution (Claims 2 & 3).[4] In support of this latter claim, Blevins submits an affidavit from Miller about her version of what occurred during the alleged drug transactions.

Trial counsel Harmon's undisputed affidavit indicates that these pretrial preparation claims have no merit under *Strickland/Hill*. Blevins' prior attorney initially provided Harmon with extensive materials from the government's file, pursuant to the government's "open file" policy. This material included copies of the tapes of the drug buys, along with transcripts of those tapes, a copy of the *Miranda* warning given to Blevins, and summaries of statements that Blevins and Brenda Miller made to law enforcement officers. Contrary to the defendant's arguments, the tapes and the statements indicate that Blevins discussed prices and drug amount ("an

_____

[4] The latter portion of this claim Blevins first presented in his supplemental brief as an amendment. I find that this claim relates back to the claims about Miller in Blevins' original § 2255 motion and will consider the amended claim. *See* § 2255(f)(1) (requiring § 2255 claims to be filed within one year of date on which conviction becomes final); Fed. R. Civ. P. 15(c); *Mayle v. Felix*, 545 U.S. 644, 664 (2005).

eight ball") with the confidential informant "Larry," on October 25 and December 15, 2005.[5]

In addition to reviewing the discovery materials provided to him, attorney Harmon spoke to the investigating officers regarding Blevins's own arrest and information concerning Larry; reviewed court records to compile a list of prior offenses for Blevins and Larry; researched issues surrounding Blevins' confession and Miller's statement; and interviewed each of the witnesses Blevins requested for his defense. On August 1, 2006, just before trial, Harmon filed a Supplemental Discovery Request for *Brady* material, specifically requesting additional information about Larry and his violations of probation.

Harmon states that through this investigation and research, he "assured [himself] that there was no other information available that would impact favorably" for the defense and found no basis to move for suppression of the certification of the methamphetamine or Blevins's prior statement. (Gov't Mot. to Dismiss, Ex. 1, 2.) Harmon further states that, in his experience, arguing the lack of fingerprints on drug

---

[5] The guilty plea hearing transcript reflects that the government also would have presented testimony from the officers working with Larry in making the drug buys, would have proffered lab test results indicating that the substances Larry purchased from Blevins were methamphetamine, and would have presented a statement that Blevins made to investigators after his arrest, admitting that he had sold methamphetamine to Larry on the two occasions charged in the indictment.

baggies as a defense is ineffective, because the usual response from prosecution witnesses is that fingerprints generally cannot be lifted from that substance.

Comparing Miller's statements to law enforcement and her statements in witness preparation interviews, Harmon felt that Miller's testimony would be too contradictory and unconvincing to be beneficial to the defense. At times, Miller said that the meeting between Larry and Blevins involved payment of a debt, while at other times she said that it was a drug transaction.

Harmon reasonably could have believed that Blevins knew Miller's story, given her close relationship to Blevins. Moreover, I find that Harmon's apprehensions about the credibility of Miller's statements were reasonable. In her affidavit submitted with Blevins' supplemental brief, Miller states that she and Blevins met Larry on October 25, 2005, to pick up and babysit Larry's children and that she saw no drug transaction and overheard no discussion of such a transaction during this meeting. She stated that she and Blevins met Larry on December 15, 2005, to discuss a loan that Blevins had agreed to give Larry for car repairs, that Miller brought a gram of methamphetamine into the car for that meeting, unbeknownst to Blevins, and returned it to Larry, who had given it to her the night

before for safe keeping.[6]  She claims that she informed Harmon of her willingness to testify to this sequence of events, but Harmon did not inform Blevins of Miller's story and convinced him to plead guilty.

Moreover, Harmon reasonably could have believed that the defense value of Miller's promised testimony of Blevins' innocence was, by far, outweighed by the sentencing benefits Blevins would gain by pleading guilty.  Miller's story — about babysitting and about keeping drugs overnight for Larry and then passing them back in secret — is simply fantastic on its face.  In addition, these details of her proposed testimony are not corroborated by the transcripts of the October 23 and December 15 conversations between Blevins and Larry, which do not include any discussion of babysitting or a loan for car repairs.  However, the transcripts of these conversations do include mention of an "eight ball," which is a well known street term for a quantity of drugs.  On the other hand, by pleading guilty, Blevins achieved a reduction in his Base Offense Level for acceptance of responsibility that brought his sentencing range down from 262 to 327 months to 188 to 235 months imprisonment.

---

[6]  Miller stated that Larry asked her to keep the drugs for him overnight, because he had to drive home in a car with mechanical problems and if it broke down and police came to help him, they would find out that his driver's license was suspended and they would want to search the car and would find any drugs he was carrying.

In short, I find that Blevins has not alleged facts on which he could overcome the presumption that counsel's pretrial investigation and motions were reasonable strategic choices under the circumstances. Moreover, Blevins fails to demonstrate any reasonable probability that counsel's filing additional pretrial motions, taking Miller's statement, or discussing her potential testimony in more detail with Blevins would have changed the legal and factual landscape of the case such that a reasonable defendant would have rejected the benefits of a guilty plea and instead would have insisted on a jury trial and the likelihood of the higher sentencing range.[7] Thus, Claims 1 and 3 fail under *Strickland/Hill*, and I will deny relief accordingly.

2. Sentencing Claims.

In Claims 2 and 4, Blevins faults counsel for failing to investigate and present additional evidence with regard to sentencing. Counsel's unrefuted affidavit, however, fully explains why each of the actions Blevins requests would not have been beneficial to the defense. As stated, Miller was not a credible witness and might have garnered perjury charges for herself if she had testified — in contradiction of prior statements she had made — that Blevins did not sell drugs to Larry.

---

[7] Blevins' current assertions that knowledge of Miller's willingness to testify would have caused him to insist on trial does not affect the objective prejudice inquiry under *Hill*. 474 U.S. at 60 (holding that prejudice inquiry must be made "'without regard for the idiosyncrasies of the particular decisionmaker.'") (quoting *Strickland*, 466 U.S. at 695).

Counsel did not challenge the probation officer's characterization of Blevins's residence for two reasons. First, Blevins's supervised release was revoked because he committed new criminal offenses, so casting doubt on the officer's supervision of him would have had no impact on the revocation of his release. Second, attacking the officer's credibility would have damaged the defense effort to establish that Blevins had done well under that officer's monitoring, that Blevins was working hard and being cooperative while on supervision, and that the two small drug sales were isolated incidents.

I cannot find that these legal tactics were unreasonable. Nor does Blevins establish any reasonable probability that the outcome at sentencing would have been any different if Miller had testified or if counsel had informed the court that Blevins lived in a house, not in an apartment, as the probation officer stated. Both of these claims fail under *Strickland*, and I will deny relief accordingly.

Claims 5 and 6 assert that counsel should have moved for a continuance of sentencing based on computer problems and that he lied to Blevins about having filed a request for continuance. Blevins fails to present any specific piece of information not available to him at sentencing because of counsel's computer problems. Indeed, counsel states that the information he lost as a result of the computer malfunction was either available to him from another source or could be recreated from memory.

Thus, I cannot find that counsel's failure to move for continuance of the sentencing hearing was either an unreasonable strategy or that absent this omission, the outcome at sentencing would have been different. I will deny relief as to Claims 5 and 6, as these claims fail under both prongs of *Strickland*.

## B. SUPPLEMENTAL CLAIMS.

In his supplemental submissions, Blevins asserts numerous claims not presented in his initial § 2255 motion. I construe these new claims as an attempt to amend his § 2255 motion. Because the majority of these claims are untimely filed, I will deny the amendment.

A person convicted of a federal offense has one year to file a § 2255 motion, starting from the latest of the following dates:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)     the date on which the facts supporting the claim or claims
        presented could have been discovered through the exercise
        of due diligence.

28 U.S.C.A. § 2255(f). A defendant's conviction becomes final when the defendant's

opportunity to file a petition for a writ of certiorari expires. *Clay v. United States*,

537 U.S. 522, 525 (2003).

An amendment to a pending § 2255 motion is also subject to the limitation in

§ 2255(f) unless the amendment relates back to a timely raised claim, pursuant to

Rule 15(c). *Mayle*, 545 U.S. at 664. "So long as the original and amended petitions

state claims that are tied to a common core of operative facts, relation back will be in

order." *Id.*; *United States v. Pittman*, 209 F.3d 314, 317-18 (4th Cir. 2000) (finding

that late-filed claims did not relate back under Rule 15(c) to timely claims because

they arose from "separate occurrences of both time and type") (internal quotation

marks and citation omitted).

Blevins' conviction became final on October 3, 2007, when he did not file a

petition for a writ of certiorari within 90 days following the Fourth Circuit's decision

affirming the judgment. *See* Sup. Ct. R. 13(1). On August 9, 2008, well within one

year from the date the conviction became final, Blevins' retained counsel filed a §

2255 motion on his behalf, raising ineffective assistance claims. Blevins' year to file

§ 2255 claims expired shortly thereafter, on October 2, 2008.

In his supplemental responses, in addition to adding details to his previously filed ineffective assistance claims, Blevins presents the following additional claims:

1. The prosecution withheld the fact that Miller, not Blevins, was the target in the drug buy and withheld other information about the confidential informant or statements by this individual that may have been favorable to the defense;

2. Blevins was pressured by the threat of a possible life sentence to make a decision about the plea bargain with only limited information;

3. The drug buy was not "controlled," since the police were not present to observe it or to arrest the participants immediately after the event, the recording of the transaction was made without Blevins' consent, and no documentation has been presented regarding the informant's authorization to conduct the buy;

4. The prosecution relied solely on the informant's statement about the buy, although this statement was not sworn, the informant is not a credible witness, Blevins was not found in possession of drugs or buy money when arrested, and he denied any participation in the transactions;

5.	No federal jurisdiction existed, since the law enforcement agents involved were employed by state entities and the transaction did not take place on federal property;

6.	Blevins pleaded guilty expecting to be sentenced within a range of 15 to 21 months imprisonment; made no agreement to be bound by the sentencing guidelines; and was not informed about the provisions of Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure;

7.	The court did not have an adequate factual basis for the guilty plea; and

8.	Attorney Harmon promised Blevins that if he pleaded guilty without a plea agreement, he would avoid a long sentence and would be sentenced to 21 months imprisonment at the most.

To the extent that Blevins raises these allegations as a supplement to his prior claim that his attorney conducted an insufficient investigation before advising him to plead guilty, the amendment arguably relates back to the first claim in the initial, counsel-filed § 2255 motion. For the reasons already stated, however, I find that counsel's pretrial investigation and his advice that a guilty plea would be beneficial to Blevins were reasonable under the circumstances Blevins faced. Moreover,

Blevins fails to demonstrate any reasonable probability that the additional investigation Blevins believes counsel should have made would have uncovered specific evidence on which he would have been acquitted at trial or sentenced to less time. His ineffective assistance claims, even as amended by his supplemental pleadings, fail under *Strickland*, and I will deny relief accordingly.

To the extent that Blevins raises new claims in his supplemental briefs, these claims are untimely filed. He did not assert these claims within one year of the date on which his conviction became final, and he offers no ground for failing to do so. *See* 28 U.S.C.A. § 2255(f).

Equitable tolling can apply to save an untimely filed § 2255 claim, but only if the claimant demonstrates that he has been diligently pursuing his rights and that some extraordinary circumstances stood in his way to prevent him from filing a timely petition. *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010). Blevins offers no such evidence. He waited nearly a year after the Fourth Circuit's judgment to file his counseled § 2255 motion and demonstrates no reason that he was prevented from communicating his current claims to his new attorneys for inclusion in that initial motion or within the one-year filing period.

Therefore, I will deny Blevins' attempted amendment to add supplemental claims to his § 2255 motion. In any event, none of the supplemental claims states a ground on which Blevins is entitled to relief.

First, Blevins' bare challenges to the adequacy of the government's case and the validity of the guilty plea could have been raised on appeal, but were not, and so are procedurally barred from review under § 2255, unless he shows cause for the default and resulting prejudice or actual innocence. *United States v. Frady*, 456 U.S. 152, 167 (1982). Blevins makes neither of these showings.

Second, Blevins' claims concerning the criminal investigation and other events before the plea were waived by his entry of a valid guilty plea. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (finding that when criminal defendant enters valid guilty plea, he waives all nonjurisdictional challenges to conviction based on actions that preceded the plea).

Third, his challenge to the court's jurisdiction is utterly meritless. He was charged with violating federal criminal statutes within the territorial jurisdiction of this court. The district courts have jurisdiction over drug prosecutions brought under the federal drug laws pursuant to 18 U.S.C.A. § 3231 (West 2000) ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."). *See also Prou v.*

*United States*, 199 F.3d 37, 45 (1st Cir. 1999) ("[A] federal district court plainly

possesses subject-matter jurisdiction over drug cases.").

Finally, Blevins' last supplemental claim, that counsel "guaranteed" him a

certain sentencing range if he pleaded guilty, is directly contradicted by his sworn

statements during the guilty plea hearing. At the hearing, he affirmed that he was not

pleading guilty because of any promises that anyone had made to him.[8] He offers no

reason that he should not be bound by his plea hearing statements. *See United States*

*v. Lemaster*, 403 F.3d 216, 221-22 (4th Cir. 2005) ("[I]n the absence of extraordinary

circumstances, the truth of sworn statements made during a Rule 11 colloquy is

conclusively established, and a district court should . . . dismiss any § 2255 motion

that necessarily relies on allegations that contradict the sworn statements." ).


III

A careful review of the record as supplemented by Blevins' pro se pleadings

shows that Blevins fails to state any claim for relief under § 2255. Accordingly,

although I will grant Blevins' motion seeking relief from the judgment entered June

17, 2009, will grant the government's Motion to Dismiss as to his timely claims as

---

[8] I asked Blevins, "Now, has anyone made any promise to you that caused you to
want to plead guilty?" Blevins responded, "No, sir." (Plea Hearing 5, April 28, 2007.)

supplemented by his pro se submissions, and deny his request to raise new grounds for relief.

A separate Final Order will be entered herewith.

DATED: March 23, 2011

/s/ JAMES P. JONES
United States District Judge